Sisseton-Wahpeton Oyate v. U.S. Corps of Engineers The 2010 letter is a recap of what has happened. What do you think is new in a decision? Where's the decision in here? Where do you think is the decision? I don't have the page number for you, but for example, there's an argument, I think it's on page 3, that says, you claim that this has been recaptured. We do not agree. And then it went on and explained why. Now, as federal courts, do you want the tribe to bring just an unlawful failure to act claim and that's it? They didn't say anything. There is no agency consideration, but they did consider things. Had they previously told you that they weren't going to recapture before this 2010 letter? No. That's an issue unique to the tribe and unique to the tribe raising it for the first time to the Corps. You say that the 2010 letter is the first time they, on page 3, in that paragraph, that they made a decision on recapture? With 100% certainty, Your Honor. Yes.  National Historic Preservation Act, for example, that's at the end of the letter. They're saying none of this constitutes a permit, so under our default Appendix C, which has never been approved by the Advisory Council on Historic Preservation, we are going to still use them. And under that, we only do the permit area. There's no permit here. It's exempt. Sorry, you're out of luck. There's no other letter in the record that says that. Now, I got confused here. I don't think it was in your briefs. But the letter at the end says that any tribal rights are not affected by need of this. That's what they say. Do you know what I'm talking about? That's a general condition where they're saying if there's any tribal rights affected by this, please let us know. And so that is a general condition. But another general condition is number 20, for example, is that you cannot disturb tribal historic resources pursuant to the National Historic Preservation Act. General condition number 28, you cannot stack permits. So that's identifying another general condition on the last leg, the nationwide permit. Drake himself, he explains this as one project. This is one project. And the legal niceties don't work. You could try to say, oh, you're crossing separate water bodies. But you're not. Under their own Federal Register publication, they are crossing the same water that goes into Enemieston Lake. Well, tell me about this in the federal regulation. It says for linear projects crossing a single water body, that's what you're saying. Several times at separate and distinct locations. Each crossing is a single project. Is that what you think? No. No, because if you read what the Federal Register says, you need to read. I would urge you to read on. And the part I quoted to you earlier, there's an important qualification and a very important exception to that that says that's a general rule. But if it's the same water body, if it's an irregularly shaped wetland or lake, this is a huge wetland. It's irregularly shaped. So are the wetlands up there. That's the provision that applies. So you can't just go ahead and dice and slice this project up that is one project. I'm going to reserve, unless there's other questions, I'm going to reserve the remainder of my time for rebuttal. Very well. Thank you. Thank you. Hi, good morning. May it please the Court, Robert Lundman representing the Corps. All of the tribe's claims here either are barred by the statute of limitations or fail because they're challenging a non-final agency action, the 2010 letter. And I'll start with that letter first. The letter is not a decision. It does not announce a new exemption. It does not grant or deny a permit. It responds to the tribe's concerns. It explains the state of what has passed. It recaps what has gone on and says it's willing to continue to work with the tribe. What about the middle paragraph on page three that he referred to two or three times? And I finally found it. Boy, that sounds like a decision. You contend that the activities must be recaptured. We cannot agree. We've carefully considered. Nor do we find. We've assessed. We've done this. That paragraph sounds like agency's right decisions. Two responses to that. First, when the agency responds to a legal argument like this, and this is very similar to the Center for Auto Safety, independent equipment dealers, the AT&T case all from the D.C. circuit that we cite, when the agency is asked a legal question and then gives an answer, here's the legal answer to that question, that doesn't establish under Bennett v. Speer the required consequence or determination. Sure, it's a legal statement, but it alone is not a consequence or determination that affects the tribe's rights or, in this case, Mr. Drake's rights. The second point is this falls in the category of enforcement discretion. They're coming to the court saying, you need to do X, Y, Z to enforce the Clean Water Act against Drake, relating to these prior farm road exemption decisions, 2003 and 2006. Under Heckler v. Cheney in this court's decision in Missouri Coalition, that is trying to make the court take an action that is not a mandatory duty, rather it's discretionary, and it's the quintessential enforcement discretion. And so it's not judicially reviewable under the APA for that reason, too. So first, I don't think it's final because there's no consequence, but second, even if it was final in some way in that respect, it's about enforcement discretion, and so it's not reviewable in an APA action either. Going back to the statute of limitations issue, district court here made very thorough findings that as of January 2005 the claim had accrued. This court reviews those for clear error. District court's findings in the process of the evidentiary hearings leading to those findings were not erroneous in any way. So what injury had the tribe suffered in January 2005? Well, the injury they would have suffered as of 2005 is their legal claim that the first farm road exemption was deficient. And to the extent, the only injury they describe in addition to that, that there's a defect in that initial farm road exemption, is that the use changed later. But that falls into that same enforcement discretion problem. If the court's decision in 2003 was fine because he described an agricultural use, he's going to use it for cattle movement on his property, it doesn't then become defective when he changes the use. The question is just that 2003 decision, the question then is does the court enforce or not? And that's a discretionary court decision. Wouldn't the tribe have to be harmed by the failure, though? In other words, the granting of an exemption alone, they may have known that that happened, but wouldn't they also have had to have been harmed by that? Well, the other part of the district court's finding, I think, is that they had already heard at that point, and they heard at the January 2005 meeting, testimony, not testimony, but discussion from Drake's neighbor that he was using this for development purposes. And so that's their theory. And so that is part of the January 2005 meeting. Two tribal representatives are there, and the tribe doesn't argue that they weren't representing the tribe or there's any problem with that. They're just saying it didn't come up and they didn't have a concrete enough injury. But the whole theory that they bring this case on, that the farm road exemptions were not really for a farm road, was floated at that meeting, and that's enough to start the statute of limitations. The other prong of statute of limitations argument that they make in their briefs is equitable tolling. We think the district court rejected that for factual reasons as well. If nothing else, by 2010, before the statute of limitations had run, they had this letter from the Corps. And so at that point, even on their theory, they had everything they needed to bring suit, and they still didn't make the 6-year deadline of early 2011. So there's no basis here for equitable tolling. Was it 14 months after the letter that the suit was filed? The letter is August 2010, and the suit is filed late 2011. So I think it's 14 months, but I don't have the date of the initial complaint. The initial complaint was late 2011, and then there was an amended complaint. We're taking the initial complaint date as the date they filed. There were changes in the complaint, but none material to the statute of limitations issue. You mentioned equitable tolling. If we determine that the tribe is not entitled to equitable tolling, do we need to even address the issue of whether 2401 is jurisdictional? No, you don't. The 2401A jurisdictional point you don't need to address if you decide the tribe is not entitled to equitable tolling. An example of that is the D.C. Circuit's case in Felter. That was after Irwin but before the Wong case, but the D.C. Circuit there is invited to reconsider whether 2401A is jurisdictional, and the D.C. Circuit says we don't have to do that because they're not entitled to equitable tolling here, and I think that's the easiest, straightforwardest way to resolve that issue. To try to clear up some confusion about what happened in 2006 and 2009, in 2006 there's another farm road exemption. We're not arguing statute of limitations with that. Their argument with respect to that is focused on whether we had to do NHPA consultation on that. Our argument is no, it was not an undertaking, not just under the Corps' definition, but under the Advisory Council's definition of undertaking. So any discrepancy between the Corps' regulations and the Advisory Council's regulations isn't implicated here because we're arguing now under the Advisory Council's definition, and we're saying it's not an undertaking. With respect to 2009, the NHPA process has been remanded to the Corps, so the nationwide permit is not properly before the Corps. The Corps has to first decide the first prong the district court identified, which is is it the type of action that could trigger an impact. If it decides that it is, then it has to go through the consultation process under the NHPA with the tribe. The result of that is obviously unknown, and that's why appellate courts, when it's a remand decision from a district court to the agency to do more process, don't have jurisdiction to determine that. In any event, as to the merits of 2009, if the Court is interested, we think a brief explains that about these two gully crossings, the nationwide permit determination was proper. This was not another farm road exemption. This is the point in time when Drake's application said, as in 2008 and then leading to 2009, this isn't for agricultural purchases. This is for a new development of a home on the north side. And so the nationwide permit process was applied instead, and it wasn't a case of a misapplication of the farm road exemption at that point. So in sum, we think statute of limitations bars the 2003 arguments. No final agency action in 2010. 2009 is remanded, and with respect to 2006, the Court's decision that the exemption didn't trigger NHPA process was right. So I have plenty of time, but unless the Court has any questions. Let me ask you a question about the stacking. Now, I'm very confused. You heard my exchange with your opponent there. I'm very confused about what your Federal Register regulation really says, about what is a single crossing of water, which is a single project. Can you help me on that? Yes. Nationwide permit 14 is the one that was applied in 2009. Just I want to note really quick, we don't think this is properly before the Court because of the remand issue, but answering your question. Nationwide permit 14 was the one the Court applied, and that's for linear transportation projects. And I think your Honor quoted the regulation properly for that, which is not that everything on a single water body has to be part of a single project analysis, but rather is it at the same location is part one. And we think, well, sure, these are all on the same part of the lake. The roads at issue in 2003 and then in 2009, the gully crossing, are not at the same place. They're at different locations. We've got little arrows in our brief on page 6 that point to the 2009 gully crossing and the 2003 road exemption decision. So we've got a map there, but our brief, we've tried to identify where those different locations are. You know what your opposing counsel was telling me that I don't have in front of me? He says there's a later provision to the Federal Register that reads a little differently. I think that's a different nationwide permit. And I think our brief explains that. I don't think it's nationwide permit 14. And if it is related to nationwide permit 14, it's the first part and not a latter part. It's the part about first deciding, like, is it on the same water body? But the linear transportation project turns on the location and not every part of a project impacting a single water body must be considered simultaneously. Thank you. And the only other point I want to make about linear transportation projects is the idea of utility, which we explain in our brief as well, and the tribe I don't think has rebutted. The 2003 and 2006 farm road exemption decisions, they provided agricultural purposes. 2009 gully crossing was for this additional home. The purposes are different. They're independent. You can build the gully crossing to build the second home. You can improve the movement of your cattle. Those are not the same utility and or purpose. So unless the court has any further questions, we request that you affirm the district court. Hearing none, thank you. Thank you. Hello. In regard to enforcement discretion, this is not an enforcement discretion case because the tribe prevailed down below on the enforcement discretion issue. The district court actually found in favor of us saying federal courts review recapture issues, nationwide permit issues all the time. These are final agency actions. In regard to the project, if this court is going to look at it through the eyes of final agency action where you have an application and then you have a private letter verification that's not shared with anybody, that paper review is probably going to lead you just to one result. If you will consider the facts on the ground that injured the tribe in 2009 when you have bulldozers leveling out 2,000 feet of lakeshore, we discover at that time this information. It's one project. It's one project as a matter of fact. The applicant is describing it as one project. The court has never explained how you can use a bridge in the middle of the wetland all by itself. It has independent utility. It does not. You have to take a look at our claims and the facts on the ground at a later date. It's not enforcement discretion. They didn't appeal that. We had prevailed. On the statute of limitations, do you make an equitable tolling argument or is it more of an equitable estoppel argument? We believe it's equitable tolling because the tribe was misled. Face-to-face, we requested consultation. We got a government consultation, and we're asking them, the chairman is. He's saying this is all bulldozed down, all 10, 30 acres. Whenever acres are up there, all the shoreline is bulldozed down. You said it was for farm road up there. What's going on? And they said, yeah, we know what it looks like, but it's for farm road. They told Senator Thune six months previous, they told the newspaper before that, when they called, they said, yeah, we got information that he changed his intent. It's for a second residence. Well, they never told the tribe that. Tell the truth. Be honest. Their own core policy has a consultation guideline, and it says to be open, to be truthful, to have dialogue, and to deliberate together. That just didn't occur here. That sort of lack of consultation, the lack of honesty, should not be rewarded in the context of an equitable tolling. The tribe was misled. I see I'm out of time. This is other questions. Thank you for your questions today, and thank you for your time. We urge that we can pursue our claims on remand. We appreciate your arguments as well, as well as your opposing counsel and your briefs. Case will be submitted and decided in due course.